IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

BRIAN SHAWN JANUS                                                                                    PLAINTIFF


v.                                    CIVIL NO.        2:10-CV-02158


MICHAEL J. ASTRUE, Commissioner
of Social Security Administration                                                                    DEFENDANT

## MEMORANDUM OPINION

Plaintiff brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for a period of disability and disability insurance benefits (DIB) and supplemental security income ("SSI") under Title II of the Social Security Act (Act), 42 U.S.C. § 423(d)(1)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I.    Procedural Background:**

Mr. Janus protectively filed an application for Supplemental Security Income under Title XVI of the Social Security Act on August 24, 2007, alleging an onset of disability on or about December 19, 2006 (T.20,57,108-111). The Social Security Administration denied his claim initially and at reconsideration (T.57,67-69,70-72,73-74). Following the hearing, the ALJ rendered an adverse decision on October 23, 2009 (T.57-64). Mr. Janus requested that the Appeals Council review the adverse decision of the ALJ on October 28, 2009 (T.5-6). On August 16, 2010, the Appeals Council issued a decision denying Mr. Janus' request for review and

accepting the ALJ's conclusion that he was not disabled (T.1-3). Having exhausted his administrative remedies, Mr. Janus has initiated this action for a judicial determination of his eligibility for Supplemental Security Income.

## II. Applicable Law:

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Id*. "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Id.* As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). If the court finds it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, the court must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable

clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

**III.    Discussion**:

The ALJ concluded that "the claimant has the following severe impairments: seizures, depression, degenerative disc disease and migraine headaches" (T.59, Finding 2). However, the ALJ determined that "the claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (T.59, Finding 3). He added that "furthermore, the medical evidence does not document listing-level severity, and no acceptable medical source has mentioned findings equivalent in severity to the criteria of any listed impairment, individually or in combination" (T.59, Finding 3).

The Plaintiff fist contends that the ALJ failed to consider all of the Plaintiff's impairments in combination (ECF No. 8, p. 10).

**A. Failure to Consider Impairments in Combination**

The ALJ must consider the impairments in combination and not fragmentize them in evaluating their effects. *Delrosa v. Sullivan*, 922 F.2d 480, 484 (8th Cir. 1991) (citing *Johnson v. Secretary of Health & Human Servs.*, 872 F.2d 810, 812 (8th Cir. 1989). In the present case, therefore, the ALJ was obligated to consider the combined effect of [Plaintiff]'s physical and mental impairments. Id. at 484, citing *Reinhart v. Secretary of Health & Human Servs.*, 733 F.2d 571, 573 (8th Cir. 1984); *Wroblewski v. Califano*, 609 F.2d 908, 914 (8th Cir. 1979). Under these circumstances, the Social Security Act requires the Commissioner to consider all impairments without regard to whether any such impairment, if considered separately, would be of sufficient medical severity to be disabling. *Cunningham v. Apfel*, 222 F.3d 496, 501 (8th Cir. 2000).

The Plaintiff contends that the ALJ neglected to discuss the fact that the Plaintiff complained of tingling and numbness in the left arm, fatigue, or adjustment disorder in any detail at all.

It is important to note that Plaintiff did not allege tingling or numbness in his left arm, fatigue, or adjustment disorder as impairments in his initial disability application. *See Dunahoo v. Apfel*, 241 F.3d 1033, 1039 (8th Cir. 2001) (the fact that plaintiff did not allege depression in his application was significant). See *also Smith v. Shalala*, 987 F.2d 1371, 1375 (8th Cir.1993).

The record shows that Plaintiff complained of tingling in his arm on December 4, 2004 (Tr. 214). The Plaintiff's electrocardiogram, chest x-ray, and serologies were all normal. (Id.).

The doctor's plan was to provide "much reassurance" and he prescribed Motrin and told the Plaintiff that he could "return to work tomorrow". The Plaintiff did not complain of tingling again until November 25, 2008 (T. 202) but all test results again were normal. (Id.).

The record shows that Plaintiff complained only once from fatigue in December 2006, eight months prior to Plaintiff's application date (Tr. 183). Even in that reference the fatigue only followed a seizure event. (Id.). The EKG performed shortly after this complaint was normal (T. 187). There is no objective evidence to support Plaintiff's subjective complaints of fatigue.

It is true that, "[w]hile not dispositive, a failure to seek treatment may indicate the relative seriousness of a medical problem ." *Shannon v. Chater*, 54 F.3d 484, 486 (8th Cir.1995). It is also true that Plaintiff's attempts to excuse his failure to pursue more aggressive treatment cannot be wholly excused due to his claims of financial hardship. *See Murphy v. Sullivan*, 953 F.2d 383, 386-87 (8th Cir.1992) (rejecting claim of financial hardship where there was no evidence that claimant attempted to obtain low cost medical treatment or that claimant had been denied care because of her poverty); *Hutsell v. Sullivan*, 892 F.2d 747, 750 n. 2 (8th Cir.1989) (noting that "lack of means to pay for medical services does not ipso facto preclude the Secretary from considering the failure to seek medical attention in credibility determinations.") (internal quotations omitted). *Tate v. Apfel,* 167 F.3d 1191, 1197 (C.A.8 (Ark.),1999).

It is clear that the Plaintiff sought out emergency room treatment when he thought it was necessary and availed himself of low cost medical care by presenting to the Good Samaritan Clinic when he believed he needed care.

Plaintiff argues that the ALJ failed to discuss his mental impairment of adjustment disorder. See Pl.'s Br. at 10. However, as discussed in more detail subsequently, the ALJ

properly noted that on June 26, 2009, Robert L. Spray, Jr., Ph.D., a consultative examiner, diagnosed Plaintiff with adjustment disorder with depressed mood (Tr. 62, 228). The ALJ properly recognized that Plaintiff's depression was a severe impairment, but he noted that the medical evidence fails to show that Plaintiff's mental impairments resulted in limitations that would preclude unskilled work (Tr. 59, Finding No. 2; 62). Thus, the ALJ properly considered Plaintiff's mental impairments, and limited him to unskilled work [1].

**B. Subjective Complaints**

The Plaintiff contends that the ALJ disregarded the Plaintiff's subjected complaints of pain in violation of Eighth Circuit case law. (ECF No. 8, p. 10). After discussing each of the Plaintiff's impairments the ALJ determined that the Plaintiff's medically determined impairments could reasonably be expected to cause the alleged symptoms; however, the Plaintiff statements concerning the intensity, persistence and limiting effect of these symptoms are not credible to the extent they are inconsistent with the RFC assessment. (T. 62).

The standard of evaluation is not whether plaintiff experiences pain, but if the pain alleged is intense enough to cause functional limitations. *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001) (holding that the real issue is not whether the plaintiff is experiencing pain, but how severe and whether it prevents him from performing any kind of work). An ALJ may not disregard a claimant's subjective complaints solely because the objective medical evidence does not fully support them. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). The ALJ is required to take into account the following factors in evaluating the credibility of a claimant's

---

[1] The regulations define "unskilled work" as "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. §§ 404.1568(a), 416.968(a).

subjective complaints: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) dosage, effectiveness, and side effects of medication; (4) precipitating and aggravating factors; and (5) functional restrictions. *See id.* The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him to reject the plaintiff's complaints. *Masterson v. Barnhart,* 363 F.3d 731, 738 (8th Cir.2004). However, the ALJ need not explicitly discuss each *Polaski* factor. *Strongson v. Barnhart,* 361 F.3d 1066, 1072 (8th Cir.2004). The ALJ only need acknowledge and consider those factors before discounting a claimant's subjective complaints. *Id.* In the present case, the ALJ failed to acknowledge or discuss the factors in his credibility assessment of plaintiff.

**(1) the claimant's daily activities;**

The ALJ found that the Plaintiff had no limitations in his activities of daily living (T. 59). The Plaintiff indicated in his Function Report that he lived by himself and was homeless. (T. 145). He took care of his dog, and could take care of all his personal needs. (T. 146). He also indicated that he could drive, had his own car and did his own shopping. (T. 148). He stated that his social activities consisted of attending AA meeting and that he would "chair" those meeting three times a week. (T. 149). The Plaintiff also indicated to Dr. Spray in June 2009 that he went fishing. (T. 228).

These activities do not support plaintiff's claim of disability. *See Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996) (ability to care for one child, occasionally drive, and sometimes go to the store); *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996) (ability to visit neighbors, cook, do laundry, and attend church); *Novotny v. Chater*, 72 F.3d at 671 (ability to carry out garbage, carry grocery bags, and drive); *Johnston v. Shalala*, 42 F.3d 448, 451 (8th Cir. 1994)

(claimant's ability to read, watch television, and drive indicated his pain did not interfere with his ability to concentrate); *Woolf v. Shalala*, 3 F.3d 1210, 1213-1214 (8th Cir. 1993) (ability to live alone, drive, grocery shop, and perform housework with some help from a neighbor).

**(2) the duration, frequency, and intensity of the pain;**

Plaintiff reported to Dr. Spray that he never received mental health treatment (Tr. 225). The Plaintiff was seen at SEMMC ER in October for possible seizure activity (T. 211). A CT scan was performed which did show a large "old left frontotemporal infarct with encephalomalac change" but no acute hemorrhage and mild fical left posterior ethmoid opacification. (T. 212). The Plaintiff returned to the SEMMC ER in December 2004 but his electrocardiogram, chest x-ray and serologies were normal and he was told he could return to work. (T. 214). It does not appear that the Plaintiff sought treatment again until October 2006 (T. 184) and a EEG performed in December 2006 was normal (T. 187).

Thus, there was substantial evidence for the ALJ to doubt Plaintiff's complaints of disabling symptoms considering Plaintiff failed to seek more frequent and substantive treatment. *See Benskin v. Bowen*, 830 F.2d 878, 884 (8th Cir. 1987) (upholding ALJ's consideration of claimant's failure to seek medical attention where claimant's measures to relieve pain were not indicative of severe, disabling pain).

**(3) dosage, effectiveness, and side effects of medication;**

At the time of filing for disability the Plaintiff indicated that he was on HCT2 (HCTZ) [2]

---

[2] HCTZ (hydrochlorothiazide) is a thiazide diuretic (water pill) that helps prevent the body from absorbing too much salt, which can cause fluid retention. This medication is also used to treat high blood pressure (hypertension).

for his blood pressure and Trileptal [3] for seizures. He indicated that there were no side effects to these medications. (T.158). A medical note from Good Samaritan Clinic dated August 1, 2007 stated that the Plaintiff was doing good with the meds. (T. 179). The same record indicated that the Plaintiff's blood pressure was 108/70 (Id.). "If an impairment can be controlled by treatment or medication, it cannot be considered disabling." *Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir.2004); Gray v. Apfel 192 F.3d 799, 804 (C.A.8 (S.D.),1999).

In this case it does not appear that the Plaintiff was ever prescribed any prescription medication for pain and if the Plaintiff was taking anything for pain it would have been over the counter medication. *See Hepp v. Astrue*, 511 F.3d 798, 807 (8th Cir. 2008) (moderate, over-the-counter medication for pain does not support allegations of disabling pain). "The ALJ may properly consider both the claimant's willingness to submit to treatment and the type of medication prescribed in order to determine the sincerity of the claimant's allegations of pain." *Thomas v. Sullivan*, 928 F.2d 255, 259 (8th Cir.1991) (citations omitted).

**(4) precipitating and aggravating factors; and**

There appear to be no precipitating or aggravating factors.

**(5) functional restrictions**

No physician ever placed any functional restrictions upon the Plaintiff. After the Plaintiff was see by Dr. Hemdon in December 2004 he was authorized to "return to work tomorrow". (T. 214). Dr. Honghiran, noted that Plaintiff did have some abnormal limitations in his lumbar spine

---

[3] Trileptal (oxcarbazepine) is in a group of drugs called anticonvulsants, or antiepileptic drugs. It works by decreasing nerve impulses that cause seizures. Trileptal is used to treat partial seizures in adults and children who are at least 2 years old. See www.drugs.com Viewed October 18, 2011.

(T. 223) but he noted that the Plaintiff range of motion was without muscle spasms and that there was no severe pain. (T. 221). He also noted that the Plaintiff had negative straight leg raise [4] in both legs (Id.) and Plaintiff had no signs of neurological deficits (T. 222).

The Plaintiff was seen by Dr. Spray, a psychologist, for a Mental Diagnostic Evaluation on June 26, 2009. Dr. Spray noted that the Plaintiff's produced a "grossly exaggerated invalid MMPI-2 profile and that symptom exaggeration was noted (T. 228). Dr. Spray also administered a CARB test to the Plaintiff. The Computerized Assessment of Response Bias (CARB) is a digit-recognition procedure designed to detect poor effort during a neuropsychological evaluation. (See www.ncbi.nlm.nih.gov/pubmed/11935450  Viewed October 18, 2011). Dr. Spray noted a positive result but explained that it could be a false positive because of the Plaintiff's old head trauma. (T. 228-229).

The ALJ determination to discount the Plaintiff's subjected complaints is supported by the evidence.

## C.  RFC

The Plaintiff contends that the ALJ committed error in his determination of his residual functional capacity.

The ALJ determined that the Plaintiff had the residual functional capacity to lift and carry 20 pounds occasionally and 10 pounds frequently and that he could sit and stand/walk for 6 hours in an eight-hour workday, but that he was to avoid concentrated exposure to hazard, such as unprotected heights and heavy machinery and that he could perform unskilled work (T. 60).

---

[4]"The straight leg raise test is positive if pain in the sciatic distribution is reproduced between 30 and 70 degrees passive flexion of the straight leg."

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). A disability claimant has the burden of establishing his or her RFC. *See Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir.2004). "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations. *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003). "Under this step, the ALJ is required to set forth specifically a claimant's limitations and to determine how those limitations affect her RFC." *Id*.

The record shows that on October 7, 2004, Plaintiff visited the emergency room at St. Edward Mercy Medical Center (St. Edward), with complaints of possible seizure activity (Tr. 211). A CT scan of Plaintiff's brain was unable to indicate anything specifically related to his symptoms (Tr. 212). However, doctors diagnosed Plaintiff with possible seizure activity, and prescribed medication related to this condition (Tr. 211). On December 29, 2004, Plaintiff returned to the emergency room at St. Edward complaining of chest pain and tingling in his fingers (Tr. 214). An x-ray examination of Plaintiff's chest revealed normal results (Tr. 216).

Doctors diagnosed Plaintiff with anterior chest wall syndrome, prescribed medication, and told Plaintiff he could return to work in the next day (Tr. 214).  The Plaintiff's treating physician was clearly of the opinion at this time that the Plaintiff was able to return to work without any limitations. The opinion of a treating physician is accorded special deference and will be granted controlling weight when well-supported by medically acceptable diagnostic techniques and not inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2); *Prosch v. Apfel*, 201 F.3d 1010, 1012-13 (8th Cir. 2000).

      On October 2, 2006, Plaintiff visited the Good Samaritan Clinic complaining of frequent seizures (Tr. 183). Doctors diagnosed Plaintiff with uncontrolled seizures (Tr. 183). On December 15, 2006, Plaintiff returned to the Good Samaritan Clinic with complaints of migraines and seizure disorder (Tr. 183). Doctors ordered an electroencephalogram (EEG), and increased Plaintiff's seizure medication, Trileptal (Tr. 183). On December 20, 2006, Plaintiff underwent an EEG that showed normal results (Tr. 187). On February 9, 2007, Plaintiff reported that he was still having light seizures but he was doing better (Tr. 181). On August 1, 2007, Plaintiff attended a six month follow-up appointment for his seizure, and the record indicates that he was doing well with his medication (Tr. 179).

      Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits. *See, e.g., Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir.2004); *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir.1987); see also *Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir.1983) (affirming a denial of benefits and noting that the claimant's impairments were responsive to medication). *Warre v. Commissioner of Social Sec. Admin*.  439 F.3d 1001, 1006 (C.A.9 (Or.),2006).  No treating physician ever placed any limitations on the

Plaintiff in work or any activity.

A non-examining consultive evaluation was performed by Dr. Steve Owens on September 23, 2007 who determined that the Plaintiff's had no severe physical limitations. (T. 191). Dr. Owens' findings were reviewed and confirmed by Dr. Jerry Thomas on November 20, 2007. (T. 196). We have stated many times that the results of a one-time medical evaluation do not constitute substantial evidence on which the ALJ can permissibly base his decision. See, e.g., *Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir.1999) (stating that the opinion of a consultative physician does not generally satisfy the substantial evidence requirement). In the present case, however, the non-examining opinion is not the only medical evidence in the file upon which the ALJ based his decision.

On June 1, 2009, Ted Honghiran, M.D., a consultative orthopaedic surgeon, performed an orthopaedic examination of Plaintiff (Tr. 221-22). On physical examination, Dr. Honghiran noted that Plaintiff was able to drive himself to the appointment, and could dress and undress with no problems (Tr. 221). Also, Plaintiff had complete range of motion in his back, with no muscle spasms and no severe pain (Tr. 221). Plaintiff's reflexes and sensation were intact, and he had negative straight-leg-raise in both legs (Tr. 221). Dr. Honghiran noted that Plaintiff had a history of chronic seizures, which was why he could not work (Tr. 222). Otherwise, Dr. Honghiran stated that Plaintiff had chronic back pain from degenerative disc disease, but he noted no signs of neurological deficits (Tr. 222). This opinion is corroborated in all of the medical records from Good Samaritan clinic and SEMMC ER records. The Good Samaritan Clinic records of November 17, 2009 show that the Plaintiff's Gait and Station was normal and he have a negative straight leg raise (T. 235).

On June 26, 2009, Dr. Spray, a consultative psychologist, performed a "Mental Diagnostic Evaluation" of Plaintiff (Tr. 225-29). Dr. Spray noted that Plaintiff had received no mental treatment (Tr. 225).  *See Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007) (holding that lack of formal treatment by a psychiatrist, psychologist, or other mental health professional is a significant consideration when evaluating Plaintiff's allegations of disability due to a mental impairment).

Dr. Spray noted that Plaintiff has a tenth-grade education, had no difficulty learning in school, and did not attend special education classes (Tr. 226). Plaintiff was able to read and write (Tr. 226). Plaintiff reported he stopped working full-time six years ago, but he continued to do "odd jobs now and then" (Tr. 226). Absent a showing of deterioration, working after the onset of an impairment is some evidence of an ability to work. *See Goff v. Barnhart*, 421 F.3d 785, 793 (8th Cir.2005).  In *Johnson v. Apfel*, 240 F.3d 1145, 1148-49 (8th Cir.2001), the court stated "[a]cts which are inconsistent with a claimant's assertion of disability reflect negatively upon that claimant's credibility."

Dr. Spray's mental evaluation also showed that Plaintiff's affect was appropriate, speech was normal, and thoughts were logical (Tr. 227). Dr. Spray ranked Plaintiff's intelligence within the borderline range (Tr. 227). He noted that Plaintiff experienced situational depression related to being unemployed (Tr. 227). Dr. Spray diagnosed Plaintiff with adjustment disorder with depressed mood, and assessed him with a Global Assessment of Functioning (GAF) score of 55-60 [5](Tr. 228).

---

[5] A GAF score of 51 to 60 indicates "moderate symptoms ... OR moderate difficulty in social, occupational, or school functioning." DSM-IV-TR at 34.

Regarding Plaintiff's adaptive functioning, Dr. Spray noted that Plaintiff reported no difficulty with self care, he could drive, went fishing, attended AA meetings, read, and used to hunt (Tr. 228). Also, although Plaintiff's ability to attend and concentrate was moderately limited during the evaluation, Plaintiff could communicate effectively with Dr. Spray, was persistent during the evaluation, and showed no problems with pace (Tr. 228).

The Plaintiff visited the Good Samaritan Clinic on November 12, 2009 and the physical exam noted that the Plaintiff was oriented, and that his mood, affect and memory were all normal. (T. 235).  This is the same notation made August 1, 2007 (T. 179); February 9, 2007 (T. 181); and December 15, 2006 (T. 183).  No medical records indicate that the Plaintiff was not oriented or had difficulty with memory.

V.	**Conclusion:**

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision, and thus the decision should be affirmed.  The undersigned further finds that the plaintiff's Complaint should be dismissed with prejudice.

Dated  this 20th day of October 2011.

/s/ J. Marschewski
HONORABLE JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE